1

2

3

4

5
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
6
AT SEATTLE

7
FISH NORTHWEST,

8
                    Plaintiff,

9
        v.

10
BARRY THOM, in his official capacity
as Regional Administrator of the
11
National Marine Fisheries Service;
CHRIS OLIVER, in his official capacity
12
as the Assistant Administrator for
Fisheries of the National Marine
13
Fisheries Service; NATIONAL
MARINE FISHERIES SERVICE; GINA
14
RAIMONDO, in her official capacity as          C21-570 TSZ
Secretary of the United States
15
Department of Commerce; DARRYL                 ORDER
LaCOUNTE, in his official capacity as
16
Director of the Bureau of Indian Affairs;
BUREAU OF INDIAN AFFAIRS;
17
UNITED STATES DEPARTMENT OF
COMMERCE; MARTHA WILLIAMS,
18
in her official capacity as Principal
Deputy Director of U.S. Fish and
19
Wildlife Service; U.S. FISH AND
WILDLIFE SERVICE; BYRON
20
ADKINS, in his official capacity as
Director of the U.S. Department of
21
Interior; U.S. DEPARTMENT OF
INTERIOR,

22
                    Defendants.

23

ORDER - 1

THIS MATTER comes before the Court on the motion to dismiss, docket no. 46, filed by Defendants United States Department of Commerce, United States Department of Interior, National Marine Fisheries Service ("NMFS"), U.S. Fish and Wildlife Service ("USFWS"), Bureau of Indian Affairs ("BIA"), and various individuals acting in their official capacities (collectively the "Federal Defendants"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court concludes that oral argument is unnecessary and enters the following order.

**Background**

Plaintiff Fish Northwest ("FNW") is a Washington non-profit corporation "committed to the conservation and preservation of Puget Sound salmon and restoring and expanding fishing opportunities for Washington's anglers." Second Am. Compl. at ¶ 8 (docket no. 39). FNW's members include "individuals that enjoy fishing and care deeply about the conservation and recovery of Puget Sound salmon" and "businesses that rely on salmon fisheries for Puget Sound salmon." *Id.* On January 29, 2021, FNW submitted to Federal Defendants its sixty-day notice of intent to sue under the Endangered Species Act ("ESA"). *Id.* at ¶ 21; Ex. 1 to Second Am. Compl. (docket no. 39). In April 2021, FNW brought this action against Federal Defendants and the State of Washington ("State"). *See* Compl. (docket no. 1). FNW voluntarily dismissed the State under Rule 41(a)(1) on June 21, 2021.

FNW asserts five claims against the Federal Defendants: (1) NMFS failed to ensure "no jeopardy" of listed species under Section 7(a)(2) of the ESA, 16 U.S.C.

1   § 1536(a)(2); (2) the 2020 and 2021 BiOps are arbitrary, capricious, and not in

2   accordance with applicable law under the Administrative Procedure Act ("APA"); (3)

3   BIA is prohibited from consulting with NMFS under Section 7 of the ESA; (4) NMFS

4   and USFWS failed to consult on their own agency actions in 2020 under Section 7 of the

5   ESA; and (5) NMFS failed to enforce the ESA against the Treaty Tribes and the State for

6   conducting unlawful take of listed species under Section 9 of the ESA, 16 U.S.C.

7   § 1538(a)(1)(B).  Second Am. Compl. at ¶¶ 56–64.

8        Federal Defendants now move to dismiss all claims asserted against them.  *See*

9   Mot. to Dismiss (docket no. 46).  Federal Defendants assert that: (1) FNW failed to plead

10  specific factual allegations to establish standing for all its claims, (2) challenges to the

11  2020 BiOps and accompanying Incidental Take Statement ("ITS") are moot, (3) BIA

12  cannot be liable for violating the ESA by engaging in consultation in compliance with the

13  ESA, (4) FNW's claim that NMFS and USFWS failed to consult on their agency actions

14  in 2020 is moot as the 2021 BiOps examined the effects of the agencies' Puget Sound

15  fishery funding, and (5) any claim that NMFS failed to enforce the ESA against the

16  Treaty Tribes and the State was not noticed in FNW's sixty-day notice of intent to sue

17  and is not justiciable as NMFS's decision to enforce the ESA is committed to agency

18  discretion.  *Id.* at 8.

19  **Discussion**

20        1.        **Rule 12(b)(1) Standard**

21        Federal Defendants bring their motion to dismiss under Federal Rule of Civil

22  Procedure 12(b)(1), arguing that the Court lacks subject matter jurisdiction to hear

23

1    FNW's claims. *Id.* at 14–17. An attack under Rule 12(b)(1) comes in two forms: facial

2    or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004).

3    Federal Defendants raise a facial challenge to FNW's claims. Mot. to Dismiss (docket

4    no. 46 at 6–7). A facial challenge asserts that the allegations of the complaint are

5    insufficient on their face to invoke federal jurisdiction, while a factual challenge disputes

6    the truth of the allegations in the complaint that would otherwise support subject matter

7    jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039. With respect to a facial challenge

8    under Rule 12(b)(1), a plaintiff is entitled to the same safeguards that apply to a Rule

9    12(b)(6) motion to dismiss for failure to state a claim. *See Friends of Roeding Park v.*

10   *City of Fresno*, 848 F. Supp. 2d 1152, 1159 (E.D. Cal. 2012). The allegations of the

11   complaint are presumed to be true, *id.*, and the Court may not consider matters outside

12   the pleading without converting the motion into one for summary judgment. *See White v.*

13   *Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

14        **2.    Standing**

15             **A.    General Standard**

16        To file a suit in federal court, a plaintiff must have suffered sufficient injury to

17   satisfy the "case or controversy" requirement of Article III of the United States

18   Constitution. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). Three elements are required to

19   establish the "irreducible constitutional minimum of standing." *Lujan v. Defs. of*

20   *Wildlife*, 504 U.S. 555, 560 (1992).

21        First, the plaintiff must have suffered an "injury in fact"—an invasion of a
     legally protected interest which is (a) concrete and particularized and (b)
22        actual or imminent, not conjectural or hypothetical. Second, there must be a

23

ORDER - 4

1
2
3

causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

4  *Id.* at 560–61 (internal citations and quotations omitted).  "The 'injury in fact'

5  requirement in environmental cases is satisfied if an individual adequately shows that she

6  has an aesthetic or recreational interest in a particular place, or animal, or plant species

7  and that that interest is impaired by a defendant's conduct."  *Ecological Rights Found. v.*

8  *Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000); *see also Sierra Club v. Morton*,

9  405 U.S. 727, 738 (1972).

10      A plaintiff must clearly allege facts demonstrating every element of standing.

11  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547 (2016).  "The plaintiff, as the

12  party invoking federal jurisdiction, bears the burden of establishing these elements."  *Id.*

13  The Court evaluates standing for each claim, *see Daimler-Chrysler Corp. v. Cuno*, 547

14  U.S. 332, 352 (2006), and the facts necessary to establish standing vary as the parties

15  progress through the stages of litigation.  For example, "[a]t the pleading stage, general

16  factual allegations of injury resulting from the defendant's conduct may suffice, for on a

17  motion to dismiss we presume that general allegations embrace those specific facts that

18  are necessary to support the claim."  *Lujan*, 504 U.S. at 561 (internal citations and

19  quotations omitted).

20      A plaintiff's burden when establishing all three elements of standing also depends

21  on whether the plaintiff alleges a substantive or procedural injury.  A plaintiff challenging

22  "'a procedural right to protect his concrete interests can assert that right without meeting

23

1   all the normal standards' for traceability and redressibility." *Nat. Res. Def. Council v.*

2   *Jewell*, 749 F.3d 776, 782–83 (9th Cir. 2014) (quoting *Lujan,* 504 U.S. at 572 n.7)).  "[A]

3   plaintiff alleging procedural violations of the ESA must show only that the procedural

4   right could protect their interest, whereas a plaintiff alleging a substantive violation must

5   demonstrate that its injury would likely be redressed by a favorable court decision."

6   *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008).

7   Alleged violations of Section 7(a)(2)'s consultation requirement constitute a procedural

8   injury for standing purposes.  *Jewell*, 749 F.3d at 783.  Section 9 claims are considered

9   substantive.  *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1028 (9th Cir.

10  2012).  FNW's first, second, and fifth causes of action allege substantive violations of

11  Federal Defendants' duties under the ESA.  Second Am. Compl. at ¶¶ 56, 58 & 64.  Its

12  third and fourth causes of action allege procedural harm.  *Id.* at ¶¶ 60 & 62.

13              **B.      Associational Standing**

14                    **i.      FNW's Standing to Sue on its Own Behalf**

15          An organization can bring suit in federal court under two theories of standing: (1)

16  an organization can sue on its own behalf, or (2) it can sue on behalf of its members.

17  Like any individual, to sue on its own behalf, the organization must demonstrate that it

18  suffered an injury in fact.  *La Asociacion de Trabajadores de Lake Forest v. City of Lake*

19  *Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).  "An organization suing on its own behalf

20  can establish an injury when it suffered 'both a diversion of its resources and a frustration

21  of its mission.'"  *Id.* (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir.

22

23

ORDER - 6

2002))[1]  An organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all."  *Id.*

FNW has not demonstrated that it suffered injury.  The Second Amended Complaint alleges the following facts concerning FNW's standing to bring its claims:

> Fish Northwest is a Washington non-profit corporation that is committed to the conservation and preservation of Puget Sound salmon and restoring and expanding fishing opportunities for Washington's anglers.  Its members include individuals that enjoy fishing and care deeply about the conservation and recovery of Puget Sound salmon.  Fish Northwest's members include businesses that rely on salmon fisheries for Puget Sound salmon.

Second Am. Compl. at ¶ 8.  The Second Amended Complaint also alleges:

> Fish Northwest's injuries and those of its members are actual, concrete and/or imminent, and are fairly traceable to Defendants' violations of the ESA as described herein that the Court may remedy by declaring that Defendants' actions are illegal and issuing statutory and injunctive relief enjoining Defendants' actions and requiring Defendants to comply with their statutory and other legal obligations.

*Id.* at ¶ 9.

Attached to its Second Amended Complaint is FNW's sixty-day notice of intent to sue under the ESA, Ex. 1 to Second Am. Compl. (docket no. 39).  The Court considers this notice when determining whether FNW has standing.  The sixty-day notice is a jurisdictional requirement before bringing suit under the

---

[1] *See also East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1265 (9th Cir. 2020) ("[A]n organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose."); *Ctr. for Env't. Sci. Accuracy & Reliability v. Nat'l Park Serv.*, No. 1:14-cv-02063-LJO-MJS, 2016 WL 4524758, at *19 (E.D. Cal. Aug. 29, 2016) (holding that an environmental organization lacked standing to sue on its own behalf because it failed to show a diversion of its resources).

1    statute.  *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d

2    515, 520 (9th Cir. 1998).  The notice does not describe FNW's organization or its

3    members.  *See generally* Ex. 1 to Second Am. Compl. (docket no. 39).

4         FNW has made no attempt to show that it diverted its resources in response to

5    Federal Defendants' alleged conduct.  FNW merely lists the elements of standing and

6    asserts in conclusory terms that it suffered an injury and therefore has standing to bring

7    its claims, *see* Second Am. Compl. at ¶¶ 8–9, but the operable complaint contains no

8    facts to support that the organization diverted resources in response to Federal

9    Defendants' conduct.  Because FNW does not demonstrate that it suffered an injury in

10   fact, it does not have standing to bring the claims on its own behalf.

11                    **ii.      FNW's Standing to Sue on Behalf of its Members**

12        An organization can also litigate on behalf of its members.  An organization has

13   standing to bring suit on behalf of its members when: "(a) its members would otherwise

14   have standing to sue in their own right; (b) the interests it seeks to protect are germane to

15   the organization's purpose; and (c) neither the claim asserted nor the relief requested

16   requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State*

17   *Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  It is unclear whether an injured

18   member of an organization must be identified in a plaintiff's pleading before an

19   organization can establish standing to litigate on the member's behalf.  The Supreme

20   Court found in *Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009), that prior

21   cases "have required plaintiff-organizations to make specific allegations establishing that

22   at least one identified member had suffered or would suffer harm."  However, in *National*

23

*Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015), the 9th Circuit

explained:

> We are not convinced that *Summers*, an environmental case brought under
> the National Environmental Policy Act, stands for the proposition that an
> injured member of an organization must always be specifically identified in
> order to establish Article III standing for the organization.
> The *Summers* Court refused to find standing based only on speculation that
> unidentified members would be injured by a proposed action of the National
> Forest Service.  Where it is relatively clear, rather than merely speculative,
> that one or more members have been or will be adversely affected by a
> defendant's action, and where the defendant need not know the identity of a
> particular member to understand and respond to an organization's claim of
> injury, we see no purpose to be served by requiring an organization to
> identify by name the member or members injured.

(internal citation omitted).

FNW's Second Amended Complaint fails to establish standing for the

organization to sue on behalf of its members.  In support of its associational standing,

FNW alleges:

> Fish Northwest has standing to bring this claim.  An association, such as Fish
> Northwest, has standing when (a) the suit is related to an issue that is germane
> to the organization's purpose; (b) the organization's members would have
> standing to sue; and (c) the members' individual participation is not required.

Second Am. Compl. at ¶ 24.  Again, FNW merely lists the elements of standing without

pleading any facts.  FNW concludes that its members have standing to sue, but FNW did

not identify any of its members in its Second Amended Complaint or its sixty-day notice.

While identification of members may not be required in all cases,  FNW's injuries are not

"relatively clear" in its Second Amended Complaint, so additional facts are required to

establish the requisite injury for standing in this case.  *See Nat'l Council of La Raza*, 800

1   F.3d at 1041.  Federal Defendants, and the Court, are left to connect the dots in FNW's

2   Second Amended Complaint and speculate as to the nature of any members' injuries.  A

3   generalized statement that FNW's unidentified members "care deeply" about the

4   recovery and conservation of Puget Sound salmon is insufficient to establish injury

5   without additional facts.

6          In its Second Amended Complaint, FNW alludes to its members' economic

7   interest in the salmon.  Second Am. Compl. at ¶ 8 ("Fish Northwest's members include

8   businesses that rely on salmon fisheries for Puget Sound salmon.").  However, FNW

9   provides no facts to support that Federal Defendants' actions harmed the members'

10  businesses.  Determining who harmed the members' business is further complicated by

11  the fact that FNW's sixty-day notice expressed grievance over fishing allotments between

12  the Treaty Tribes and the non-treaty fishers.  Ex. 1 to Second Am. Compl. (docket no. 39

13  at 22).  Without additional facts, the Court is unable to determine whether Federal

14  Defendants, the Treaty Tribes, or the State caused the members' unspecified injuries.

15         In its response to Federal Defendants' motion to dismiss, FNW provides

16  declarations from two members.  Allyn Decl. (docket no. 48); Tachell Decl. (docket no.

17  49).  Because Federal Defendants raise a facial challenge under Rule 12(b)(1), the Court

18  cannot examine extrinsic evidence.[2]  Accordingly, the Court declines to consider the

19  members' declarations.

20  _____

21  [2] *See Savage v. Glendale Union High Sch., Dist.  No.  205, Maricopa County*, 343 F.3d 1036, 1039 n.2
    (9th Cir. 2003) (explaining that a facial challenge under Rule 12(b)(1) "confin[es] the inquiry to
22  allegations in the complaint"); *Ctr. for Biological Diversity v. Bernhardt*, No. 19-cv-05206-JST, 2020
    WL 4188091, at *5 n.4 (N.D. Cal. May 18, 2020) (declining to review plaintiffs' declarations when

23

ORDER - 10

1       FNW's Second Amended Complaint fails to establish standing for the

2  organization to bring suit on its own behalf or on behalf of its members, and it fails to

3  establish standing for each of its claims.  Because FNW has not established standing to

4  bring its claims, the Court GRANTS Federal Defendants' Motion to Dismiss, docket no.

5  46.

6      **3.**      **Leave to Amend**

7       Under Rule 15(a), leave to amend shall be freely given when justice so requires.

8  A district court may exercise its discretion and deny leave to amend for a variety of

9  reasons, including undue delay, repeated failure to cure deficiencies by previous

10  amendment, undue prejudice to the opposing party, and futility of amendment.  *Nat'l*

11  *Council of La Raza*, 800 F.3d at 1045 (citing *Carvalho v. Equifax Info. Servs., LLC*, 629

12  F.3d 876, 892 (9th Cir. 2010)).  Federal Defendants ask the Court to deny FNW leave to

13  amend its Second Amended Complaint.  Mot. to Dismiss (docket no. 46 at 17).  The

14  Court concludes that FNW may amend its Second Amended Complaint, subject to the

15  following limitations:

16      **A.**      **FNW's Claims Concerning the 2020 BiOp and ITS are Moot**

17

18       It is undisputed that the 2020 BiOp and accompanying ITS were superseded by the

19  2021 BiOp and ITS.  Mot. to Dismiss (docket no. 46 at 17–18); Resp. to Mot. to Dismiss

20  (docket no. 47 at 13–14).  Because the 2020 BiOp and ITS are no longer in effect,

21

22  defendants raised facial challenge); *Animal Legal Def. Fund v. Bernhardt*, No. 19-cv-06812-JST, 2020 WL 6802838, at *4 (N.D. Cal. May 18, 2020) (same).

23

1  Federal Defendants argue that FNW's challenge to the 2020 BiOp is moot.  Mot. to

2  Dismiss (docket no. 46 at 17–18).

3        A federal court lacks jurisdiction to hear moot claims.  "A claim is moot if it 'has

4  lost its character as a live controversy.'"  *All. for the Wild Rockies v. Savage*, 897 F.3d

5  1025, 1031 (9th Cir. 2018) (quoting *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*,

6  590 F.3d 725, 727 (9th Cir. 2009)).  This circuit has repeatedly held that challenges to

7  superseded biological opinions are moot.  *Am. Rivers v. NMFS*, 126 F.3d 1118, 1124 (9th

8  Cir. 1997); *Idaho Dep't of Fish & Game v. NMFS*, 56 F.3d 1071, 1074–75 (9th Cir.

9  1995); *Grand Canyon Tr. v. Bureau of Reclamation*, 691 F.3d 1008, 1017 (9th Cir.

10  2012).

11        FNW asserts that its challenge to the 2020 BiOp and ITS falls under the "capable

12  of repetition, yet evading review" exception to the mootness doctrine, *see Idaho Dep't of*

13  *Fish & Game*, 56 F.3d at 1074–75, because it is difficult to obtain effective judicial

14  review of claims challenging annual biological opinions.  Resp. to Mot. to Dismiss

15  (docket no. 47 at 13–14).  However, FNW's challenge to the 2020 BiOp and ITS does not

16  evade review as FNW challenges the same analyses and conclusions in the 2021 BiOp

17  that it seeks to challenge in the 2020 opinion.  FNW alleges that the 2020 and 2021

18  BiOps fail to ensure that Puget Sound salmon fisheries "will not jeopardize the continued

19  existence of the endangered and the threatened stocks of Puget Sound salmon" and

20  argues that both BiOps violate the APA.  Second Am. Compl. at ¶¶ 56 & 59.  The Second

21  Amended Complaint draws no distinction between FNW's challenges to the 2020 and

22  2021 BiOps.

23

Accordingly, FNW's challenge to the 2020 BioOp and ITS is moot.  Because amendment of moot claims is futile, the Court hereby DISMISSES with prejudice the portion of FNW's second cause of action relating to the 2020 BiOp and ITS.

### B.    The Court Lacks Jurisdiction for FNW's Third Cause of Action

FNW's third cause of action alleges that BIA cannot consult under Section 7(a)(2) of the ESA.  Second Am. Compl. at ¶ 60.  FNW brings this claim under the ESA's citizen-suit provision, 16 U.S.C. § 1540(g).  *Id.* at ¶ 61.  16 U.S.C. § 1540(g)(1)(A) provides that any person may commence a civil suit "to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof."

Section 7(a)(2) of the ESA requires federal agencies to engage in consultation to insure that any action "authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species . . . ."  16 U.S.C. § 1536(a)(2).  Formal consultation is required if an agency determines that any of its actions "may affect listed species or critical habitat."  50 C.F.R. § 402.14(a).  However, Section 7's requirements are not mandatory in all circumstances.  "Section 7 . . . appl[ies] to all actions in which there is discretionary Federal involvement or control."  50 C.F.R. § 402.03.  "The Supreme Court explained that this limitation

harmonizes the ESA consultation requirement with other statutory mandates that leave an agency no discretion to consider the protection of listed species." *Karuk Tribe of Cal.*, 681 F.3d at 1020–21 (citing *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 665–66 (2007)).  To determine whether "agency action" requires Section 7 consultation, courts ask "whether a federal agency affirmatively authorized, funded, or carried out the underlying activity" and "whether the agency had some discretion to influence or change the activity for the benefit of a protected species." *Id.* at 1021.

FNW claims that BIA is prohibited from engaging in consultation under Section 7(a)(2) because it does not control the harvest, taking, funding or implementation of salmon fisheries in Washington.  Second Am. Compl. at ¶ 60.  It also argues that there is a factual dispute concerning whether BIA took some discretionary action in this case. Resp. to Mot. to Dismiss (docket no. 47 at 15).  FNW states that BIA "does not provide discretionary funding for fisheries in Washington."  Second Am. Compl. at ¶ 31.  FNW cites to *Home Builders* in support of its claim that BIA cannot consult under Section 7(a)(2).  *See* Resp. to. Mot. to Dismiss (docket no. 47 at 14–15).  In *Home Builders*, the Supreme Court held that Section 7(a)(2)'s no-jeopardy duty "does not attach to actions . . . that an agency is *required* by statute to undertake once certain specified triggering events have occurred."  551 U.S. at 669 (emphasis in original).  Therefore, the U.S. Environmental Protection Agency ("EPA") had no discretion to consider whether transferring water permitting authority to a state posed jeopardy to endangered species if the state met nine enumerated criteria under section 402(b) of the Clean Water Act.  *Id.* at 663–64.  The Supreme Court did not find that the EPA violated the ESA by engaging in

1    consultation under Section 7(a)(2), only that it failed to comply with its obligations under

2    the Clean Water Act.  *Id.* at 673.

3            Section 7(a)(2) and 50 C.F.R. § 402.03 do not prohibit BIA's formal consultation

4    with NMFS.  Presuming FNW's allegations are true, as the Court does on a motion to

5    dismiss, BIA is not required to engage in formal consultation because its actions are non-

6    discretionary.  Second Am. Compl. at ¶ 31.  That BIA engaged in formal consultation

7    concerning alleged non-discretionary action does not establish that BIA and NMFS

8    *violated* the ESA.  Like in *Home Builders*, if BIA's actions are truly non-discretionary,

9    BIA's consideration of ESA concerns could result in its liability for violating some other

10   statutory obligation, but it does not result in liability for violating the ESA.

11           If there is no alleged violation of the ESA, it follows that the Court lacks

12   jurisdiction under ESA's citizen-suit provision for alleged violations of the statute.  *See*

13   16 U.S.C. § 1540(g)(1)(A).  FNW cannot allege that BIA violated the ESA by engaging

14   in formal consultation under Section 7(a)(2).[3]  The Court DISMISSES FNW's third cause

15   of action with prejudice.

16                   **C.      FNW's Fourth Cause of Action is Moot**

17           FNW's fourth cause of action is moot.  FNW alleges that "NMFS and USFWS

18   have failed to consult under Section 7 for the actions of NMFS and USFWS, including

19

20   _____

21   [3] Further analysis is unnecessary because the Court lacks subject matter jurisdiction over this claim under
     Rule 12(b)(1).  Federal Defendants argue in the alternative that FNW also failed to state a claim under
     Rule 12(b)(6).  Mot. to Dismiss (docket no. 46 at 19–23).  The Court agrees that FNW's third cause of
22   action fails to state a claim against BIA under Rule 12(b)(6).

23

ORDER - 15

1    but not limited to the funding and approval of fisheries by the State of Washington that

2    result in the taking of listed salmon." *Id.* at ¶ 62.  The parties agree that the 2021 BiOp

3    analyzed NMFS and USFWS funding of fishery related activities in Puget Sound.  Mot.

4    to Dismiss (docket no. 46 at 23).  FNW concedes that "[u]nlike past years, NMFS did

5    consult on its funding of state fisheries this year following Plaintiff's 60-day notice."

6    Resp. to Mot. to Dismiss (docket no. 47 at 15).  Here, FNW's claim lost its character as a

7    live controversy when NMFS and USFWS analyzed their actions in the 2021 BiOp, and

8    the Court can no longer grant effective relief concerning this claim.[4]

9         Granting leave to amend a moot claim is futile.  The Court hereby DISMISSES

10   with prejudice FNW's fourth cause of action.

11        **D.    FNW Failed to Provide Sufficient Notice for its Fifth Cause
               of Action**

12

13        FNW's fifth cause of action alleges that the Treaty Tribes and the State violated

14   the ESA:

15        The treaty tribes and [the Washington Department of Fish and Wildlife
          ("WDFW")] have authorized and conducted fisheries, in 2020 and 2021,
          during periods for which no incidental take statement has been issued and

16   _____

17   [4] In its response, FNW argues that while Federal Defendants consulted on their funding of Puget Sound
     fisheries, they failed to consult on their "authorization" of the fisheries.  Resp. to Mot. to Dismiss (docket
     no. 47 at 15–17).  In support of this argument, FNW cites to *Ramsey v. Kantor*, 96 F.3d 434 (9th Cir.
18   1996).  In *Ramsey*, the court considered "whether the issuance of an incidental take statement under § 7 of
     the ESA may in appropriate circumstances permit parties that are neither federal agencies nor applicants
19   to engage in incidental takes consistent with the statement without applying for section 10 permits." *Id.* at
     437.  The court also decided whether "whether the promulgation of an incidental take statement by a
20   federal agency constitutes major federal action for purposes of [the National Environmental Policy Act
     ("NEPA")]." *Id.*  While FNW contends that "[t]here is no meaningful difference between the situation in
21   *Ramsey* and the present case," *see* docket no. 47 at 16, the court in *Ramsey* addressed what constituted
     federal action under NEPA.  The situation in *Ramsey* is not the same as the present case and the *Ramsey*
22   opinion does not stand for the proposition that Federal Defendants must issue a second BiOp analyzing
     the issuance of the first BiOp, as FNW suggests.

23

thereby violated Section 9 of the ESA.  In years past, the annual incidental take statement (ITS) expired on April 30 and the next year's ITS was issued sometime in May.  Each year, WDFW approves fisheries that take place despite no ITS being in effect as required by law.  NMFS has allowed and authorized these fisheries in violation of the ESA.

Second Am. Compl. at ¶ 64.  In its response to Federal Defendants' motion to dismiss, FNW clarifies its claim, alleging that Federal Defendants have consciously abandoned their duty to enforce the ESA against the Treaty Tribes and the State for the past seven years.  Resp. to Mot. to Dismiss (docket no. 47 at 18–19).

Pursuant to 16 U.S.C. § 1540(g)(2)(A), a plaintiff may not bring an action under the citizen-suit provision of the ESA without first providing written sixty-day notice of the alleged violations.  The notice is a jurisdictional requirement for commencing an action under the ESA.  *Sw. Ctr. for Biological Diversity*, 143 F.3d at 520.  "A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA."  *Id.*  The notice must provide sufficient information to allow the notified parties to identify the alleged violations and give them an opportunity to correct the violations.  *Id.* at 522.  "A citizen is not required to list every specific aspect or detail of every alleged violation.  Nor is the citizen required to describe every ramification of a violation."  *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015) (internal quotations and citations omitted).

FNW's sixty-day notice of intent to sue does not provide notice of this claim.  While FNW's notice sufficiently identifies its other claims against Federal Defendants, the notice does not allege that Federal Defendants consciously failed to enforce the ESA against the State and the Treaty Tribes for almost a decade.  *See generally* Ex. 1 to

1   Second Am. Compl. (docket no. 39).  The only reference in the notice concerning Federal

2   Defendants alleged failure to enforce the ESA is a single sentence discussing the Treaty

3   Tribes' actions during the 2016 fishing season.  *Id.* at 25.  This is insufficient.  One

4   sentence discussing the 2016 fishing season does not identify FNW's allegation that

5   Federal Defendants abandoned their duty to enforce the ESA for a seven-year period and

6   "have consciously allowed the Treaty Tribes and State of Washington to take listed

7   species when no ITS is place."  Resp. to Mot. to Dismiss (docket no. 47 at 18–19).  The

8   Second Amended Complaint only alleges that the Treaty Tribes and the State violated the

9   ESA during the 2020 and 2021 fishing seasons and that NMFS "allowed and authorized"

10  the fisheries.  *See* Second Am. Compl. at ¶ 64.

11         Because FNW failed to provide sufficient pre-suit notice of this claim, the Court

12  hereby DISMISSES FNW's fifth cause of action without prejudice.[5]

13  **<u>Conclusion</u>**

14         For the foregoing reason, the Court GRANTS Federal Defendants' motion to

15  dismiss, docket no. 46, as follows:

16         (1)    FNW's first cause of action under Section 7(a)(2) of the ESA and its

17  second cause of action relating to the 2021 BiOp and ITS are DISMISSED with leave to

18  amend;

19

20

_____

21  [5] Because FNW's failure to comply with the notice requirement acts as an absolute bar to a suit under the
    ESA, FNW must provide sufficient notice in accordance with the ESA's citizen-suit provision, 16 U.S.C.
22  § 1540(g)(2)(A), before bringing its claim.

23

(2)     The portion of FNW's second cause of action relating to the 2020 BiOp and ITS is DISMISSED with prejudice;

(3)     FNW's third cause of action against BIA for engaging in Section 7 consultation and its fourth cause of action against NMFS and USFWS are DISMISSED with prejudice;

(4)     FNW's fifth cause of action for failure to enforce the ESA is DISMISSED without prejudice;

(5)     Plaintiff may file any amended complaint on or before November 1, 2021;

(6)      The parties are directed to file a joint status report by November 15, 2021;

(7)     The Clerk is directed to send a copy of this Order to all counsel of record.


IT IS SO ORDERED.

Dated this 12th day of October, 2021.


Thomas S. Zilly
United States District Judge